[Cite as *Elias v. Akron*, 2019-Ohio-4657.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| JOSEPH J. ELIAS, et al. | C.A. No. 29107 |
| Appellees | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| CITY OF AKRON | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CV-2017-01-0342 |

DECISION AND JOURNAL ENTRY

Dated: November 13, 2019

SCHAFER, Judge.

{¶1} Defendant-Appellant, the City of Akron (the "City"), appeals the decision of the Summit County Court of Common Pleas denying the City's motion for summary judgment claiming immunity on the basis of political subdivision immunity pursuant to R.C. Chapter 2744. This Court affirms.

I.

{¶2} Clare Elias, and husband Joseph Elias, Plaintiffs-Appellees in this matter, were riding their motorcycles in Akron, Ohio, on March 21, 2012. As the pair traveled on North Howard Street, Clare was abruptly thrown from her motorcycle to the ground. She was transported to the hospital by ambulance for the treatment of injuries she sustained in the accident.

{¶3} It was subsequently determined there was a depression or sinkhole in the road at the area of North Howard Street where the accident occurred. The Eliases filed a complaint against the City alleging that the City knew of the sinkhole and the "unreasonably dangerous hazard and

condition" it presented, but that the City "recklessly, wantonly, willfully, and negligently failed to repair it, barricade or protect against it, or warn of it." In the complaint the Eliases claimed that the sinkhole was the direct and proximate cause of the injuries Clare sustained in the accident, and also asserted a claim for loss of consortium.

{¶4} The City filed a motion for summary judgment on the basis of political subdivision immunity pursuant to R.C. Chapter 2744. In ruling on the motion, the trial court found that issues of material fact remained as to whether the City is entitled to immunity, and declined to grant summary judgment.

{¶5} The City appealed raising two assignments of error for our review. For ease of analysis, we combine those assignments of error.

II.

### Assignment of Error I

**The trial court erred by declining to consider the City of Akron's arguments addressing proof of negligence - duty, breach of duty, and proximate cause[.]**

### Assignment of Error II

**The trial court erred by denying the City of Akron's motion for summary judgment.**

{¶6} The City argues that the trial court erred when it declined to consider all of the arguments in the City's motion for summary judgment, and that the trial court ultimately erred by denying the motion.

{¶7} Under Civ.R. 56(C), summary judgment is appropriate when:

(1) [no] genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).  To succeed on a motion for summary judgment, the moving party bears the initial burden of demonstrating the absence of genuine issues of material fact.  *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996).  If the moving party satisfies this burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial."  *Id.* at 293.

## A.  Political Subdivision Immunity

{¶8}   "The denial of a motion for summary judgment is not ordinarily a final, appealable order."  *Buck v. Reminderville*, 9th Dist. Summit No. 27002, 2014-Ohio-1389, ¶ 5.  However, R.C. 2744.02(C) provides that "[a]n order that denies a political subdivision * * * the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order."  There is no dispute the City is a political subdivision of the state of Ohio and entitled to a general grant of immunity.  Accordingly, because the trial court's denial of the motion effectively denied the City the benefit of the political subdivision immunity, it is a final order. *Hubbell v. City of Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, ¶ 2.  Our review is limited to the alleged errors in the portion of the trial court's decision which denied the political subdivision the benefit of immunity; and this Court lacks jurisdiction to address any other interlocutory rulings the trial court made.  *Owens v. Haynes*, 9th Dist. Summit No. 27027, 2014-Ohio-1503, ¶ 8, quoting *Makowski v. Kohler*, 9th Dist. Summit No. 25219, 2011-Ohio-2382, ¶ 7-8.

{¶9}   Ohio's Political Subdivision Tort Liability Act, which governs political subdivision liability and immunity, is codified in Chapter 2744 of the Revised Code.  A court engages in a three-tiered analysis to determine whether a political subdivision is immune from liability for damages in a civil action.  *Moss v. Lorain Cty. Bd. of Mental Retardation*, 9th Dist. Lorain No. 13CA010335, 2014-Ohio-969, ¶ 10.  The first tier establishes generally that "a political

subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision * * * in connection with a governmental or proprietary function." R.C. 2744.02(A)(1); *Moss* at ¶ 10. In the second tier, we consider the applicability of any of the five exceptions to immunity listed in R.C. 2744.02(B)(1)-(5). If any of those exceptions apply, we move to the third tier to consider whether immunity can be restored based on the defenses enumerated in R.C. 2744.03. *Id.*

### B. General Immunity and the R.C. 2744.02(B) Exceptions

{¶10} There is no dispute that the City qualified, at the first tier of the analysis, for a general grant of immunity under R.C. 2744.02(A). Regarding the second tier of the analysis, the City presented several arguments in its motion for summary judgment claiming that none of the R.C. 2744.02(B) exceptions applied in this case. In particular, the City argued the inapplicability of R.C.2744.02(B)(3), which states:

> Except as otherwise provided in [R.C. 3746.24], political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads, except that it is a full defense to that liability, when a bridge within a municipal corporation is involved, that the municipal corporation does not have the responsibility for maintaining or inspecting the bridge.

Thus, pursuant to R.C. 2744.02(B)(3), the City may be held liable for injuries caused by its negligent failure to keep public roads in repair. *Pelletier v. Campbell*, 153 Ohio St.3d 611, 2018-Ohio-2121, ¶ 19.

{¶11} First, the City argued that R.C. 2744.02(B)(3) was inapplicable because the City was not required to place a traffic control device at the site of the sinkhole. The City then asserted seven arguments contending that "the City is immune from liability and the R.C. 2744.02(B)(3) exception does not apply because[:]"

1. "Elias cannot prove the duty element in a negligence analysis; the city owed no duty to Elias under the public duty rule"

2. "Elias cannot prove the duty element in a negligence analysis; the condition was open and obvious"

3. "Elias cannot prove the duty element in a negligence analysis; the city owed no duty of care to Elias because she assumed the risk of her action"

4. "Elias cannot prove the city breached a duty of care owed to Elias as a licensee"

5. "Elias cannot prove the city breached a duty of ordinary care"

6. "Elias cannot prove the proximate cause element in a negligence analysis; Elias' own act or omission in failing to discover the condition and avoid the risk of harm was the last act or omission that preceded the accident and was the proximate cause of Elias' injuries and damages"

7. "Elias cannot prove the proximate ca[u]se element in a negligence analysis; Elias' comparative negligence was greater than any negligence of the city as a matter of law"

1. *The City's Arguments the Trial Court Declined to Consider*

{¶12}   The City faults the trial court for declining to consider the seven arguments asserted in the motion that, according to the City, "address[] the negligence component embodied in the exception[.]"  In its judgment entry, the trial court noted

> that the City of Akron argued multiple other legal theories under the heading of political subdivision immunity in its brief such as the public duty rule, the open and obvious doctrine, etc.  However, these defenses represent defenses independent of sovereign immunity. * * * Because the City only presented these arguments within the structure of political subdivision immunity, the [c]ourt finds its determination on political subdivision immunity resolves the entirety of the [m]otion for [s]ummary [j]udgment. The [c]ourt therefore finds good cause to deny the [m]otion for [s]ummary [j]udgment based upon political subdivision immunity.

The City contends that this was "an incomplete determination on the issue of proof of the R.C. 2744.02(B)(3) exception[.]"  The City argues that, "[u]nless [Clare] can establish negligence[—]which is essential to R.C. 2744.02(B)(3)[—]then her claim fails."  In order to address this argument, this Court must address a threshold issue regarding the scope of our review.

{¶13} To establish liability on a claim of negligence, a plaintiff must show "the existence of a duty, a breach of that duty, and an injury proximately resulting from the breach of duty." *Mondi v. Stan Hywet Hall & Gardens, Inc.*, 9th Dist. Summit No. 25059, 2010-Ohio-2740, ¶ 11. However, "[s]tatutory immunity, including political-subdivision immunity, is an affirmative defense[.]" *Supportive Solutions, L.L.C. v. Electronic Classroom of Tomorrow*, 137 Ohio St.3d 23, 2013-Ohio-2410, ¶ 17, citing *Turner v. Cent. Local School Dist.*, 85 Ohio St.3d 95, 98 (1999). An affirmative defense is a new matter which, assuming the complaint to be true, constitutes a defense to it. *Davis v. Cincinnati, Inc.*, 81 Ohio App.3d 116, 119 (9th Dist.1991). Specifically, "[a]n affirmative defense is any defensive matter in the nature of a confession and avoidance. It admits that the plaintiff has a claim (the 'confession') but asserts some legal reason why the plaintiff cannot have any recovery on that claim (the 'avoidance')." *State ex rel. The Plain Dealer Publishing Co. v. Cleveland*, 75 Ohio St.3d 31, 33 (1996). The burden of proving an affirmative defense rests with the party asserting the defense. *Nationstar Mtge., L.L.C. v. Mielcarek*, 9th Dist. Lorain No. 15CA010748, 2016-Ohio-60, ¶ 11.

{¶14} The trial court declined to consider these arguments because, despite the City's attempt to raise them within the context of political subdivision immunity, the court determined that the arguments presented defenses independent of the defense of statutory immunity. The issue at this stage of the analysis is whether the City can meet its summary judgment burden to demonstrate the absence of a factual dispute as to the inapplicability of the R.C. 2744.02(B)(3) exception. If the City were to meet its burden, and if the Eliases were unable to meet the reciprocal burden to show some genuine issue of material fact in dispute regarding the applicability of the R.C. 2744.02(B)(3) exception to immunity, the affirmative defense of statutory immunity would allow the City to avoid liability regardless of whether the Eliases could prove the elements of the

underlying claims. However, the arguments asserted by the City consist of defenses that aim to negate elements of the underlying cause of action or present alternative affirmative defenses. The City has failed to demonstrate how these arguments have any bearing on, or relevance to, the second tier of the political subdivision immunity analysis.

{¶15} Certainly, such defenses may be available to the City *independent* of the affirmative defense of political subdivision immunity. However, "[t]o the extent that the City asks this Court to address the substance of [the arguments seeking to negate an element of Clare's underlying negligence claim or present alternative affirmative defenses], those issues fall outside the scope of the instant appeal which pertains solely to whether the trial court erred in denying the City the benefit of immunity pursuant to R.C. 2744.02(A)." *Davis v. Akron*, 9th Dist. Summit No. 27014, 2014-Ohio-2511, ¶ 14; *see Shepard v. Akron*, 9th Dist. Summit No. 26266, 2012-Ohio-4695, ¶ 32 ("Because the City's appeal is limited to the court's denial of immunity and the public duty rule is independent of immunity, the issue is outside the scope of this appeal."); *Baab v. Medina City Schools Bd. of Edn.*, 9th Dist. Summit No. 28969, 2019-Ohio-510, ¶ 15 (Questions about the source of a duty are beyond the scope of a limited immunity appeal.).

2. *R.C. 2744.02(B)(3)*

{¶16} As discussed above, the pertinent question at this second tier of the analysis is whether R.C. 2744.02(B)(3) provides an exception to the general grant of immunity. Because the only issue pertaining to immunity that the City raised below and on appeal is the City's contention that R.C. 2744.02(B)(3) is rendered inapplicable by R.C. 2744.01(H), we confine our analysis accordingly. *See Ponyicky v. Brunswick*, 9th Dist. Medina No. 15CA0097-M, 2017-Ohio-37, fn.1. R.C. 2744.01(H) defines "public roads" as "public roads, highways, streets, avenues, alleys, and bridges within a political subdivision." The City emphasizes that the definition of public roads

"does not include * * * traffic control devices unless the traffic control devices are mandated by the Ohio manual of uniform traffic control devices."

{¶17} In its merit brief, the City argues that, based on the timing of the incident, the placement of traffic control devices was not mandated by the Ohio manual of uniform traffic control devices. The City fails to support its argument by explaining the relevance of "traffic control devices" in the context of this case. While traffic control devices may be excluded from the definition of public roads where they are not mandated, the City has not supported its claim that this distinction removes any issues of fact regarding its alleged failure to keep a public road— rather than a traffic device—in repair. Because there are no allegations that the City failed to maintain a traffic control device, we conclude that this argument lacks merit.

{¶18} The trial court found that issues of material fact remain as to whether the city was negligent in failing to repair or properly protect a portion of a public road with a known and potentially hazardous sinkhole. The City has not raised any argument, cited to any authority, or pointed to any portion of the record to demonstrate error in the trial court's decision. Our review of the record leads this Court to determine that the City failed to demonstrate the absence of material factual issues as to the City's assessment of the sinkhole as well as any decisions regarding the repair and the safeguarding of the road. Therefore, we conclude that the City failed to meet its burden to establish the absence of a genuine issue of material fact as to the inapplicability of R.C. 2744.03(B)(3), and the trial court properly concluded that the City was not entitled to a summary judgment determination of immunity in the second tier of the analysis.

**C. R.C. 2744.03 Defenses to Restore Immunity**

{¶19} Regarding the third tier of analysis, the City argues that even assuming Clare "could demonstrate that the R.C. 2744.02(B)(3) exception applies, the City retains immunity pursuant to R.C. 2744.03(A)."

{¶20} If an R.C. 2744.02(B) exception to immunity applies, the political subdivision may still establish nonliability through a defense or immunity listed in R.C. 2744.03(A). The City asserts two defenses stated in R.C. 2744.03(A):

> (3) The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.
>
> * * *
>
> (5) The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.

{¶21} This Court has held that "the exceptions to immunity set forth in R.C. 2744.03 must be narrowly construed.'" *Shumaker v. Park Lane Manor of Akron*, 9th Dist. Summit No. 25212, 2011-Ohio-1052, ¶ 19, quoting *Sturgis v. E. Union Twp.*, 9th Dist. Wayne No. 05CA0077, 2006-Ohio-4309, ¶ 18. "'Routine decisions are not shielded by immunity under R.C. 2744.03(A)(3) or 2744.03(A)(5).'" *Id.* quoting *Sturgis* at ¶ 18. "'A "discretionary" act necessarily involves "[s]ome positive exercise of judgment that portrays a considered adoption of a particular course of conduct in relation to an object to be achieved[.]"'" *Id.* quoting *Sturgis* at ¶ 18, quoting *Addis v. Howell*, 137 Ohio App.3d 54, 60 (2d Dist.2000).

{¶22} The City contends that its employees exercised judgment and discretion regarding the sinkhole and the condition of the road. The City argues that it "is immune from liability unless

[Clare] proves that the City employees exercised their discretion with malicious purpose, in bad faith, or in a wanton or reckless manner." This contention reflects the City's misunderstanding of its dual burdens: (1) to establish its affirmative defense of statutory immunity, and (2) to demonstrate the absence of a genuine issue of material fact to show that it is entitled to summary judgment. *Mielcarek*, 2016-Ohio-60 at ¶ 11; *Dresher*, 75 Ohio St.3d at 292-293. Rather than demonstrating that immunity is restored by a R.C. 2744.03 defense, the City attempts to prematurely shift the burden to the Eliases.

{¶23} As both the party asserting the affirmative defense and the party moving for summary judgment, the burden was upon the City to show that it was entitled to summary judgment on the issue of the applicability of a defense stated in R.C. 2744.03(A). In its brief, the City fails to cite to any relevant authority or present any meaningful argument to support the contention that the City's actions were a proper exercise of discretion. The City did not reference in its motion to the trial court, and does not reference on appeal, any part of the record to support its claim, but instead asserts that unspecified "evidence filed by the City defeats any such notion" that the City's actions were not based on the proper exercise of discretion. *See* Civ.R. 56; App.R. 12(A)(2). We conclude that the City failed to meet its burden to show that immunity would be reinstated under R.C. 2744.03(A)(3) or (5). Therefore, we conclude that the trial court did not err by denying the City's motion for summary judgment on the issue of the City's claim of immunity under R.C. Chapter 2744.

### III.

{¶24} The City's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

TEODOSIO, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

EVE V. BELFANCE, Director of Law, and MICHAEL J. DEFIBAUGH and JOHN CHRISTOPHER REECE, Assistant Directors of Law, for Appellant.

A. RUSSELL SMITH, Attorney at Law, for Appellee.